# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America<br><br>v.<br><br>Stuart James WINSOR | CRIMINAL COMPLAINT<br><br>CASE NUMBER: MJ-25-04306-PCT-CDB |

I, the undersigned complainant, being duly sworn, state that the following is true and correct to the best of my knowledge and belief:

On or about the date described in Attachment A in the Glen Canyon National Recreation Area, in the District of Arizona, the defendant committed the crimes of Interfering with Agency Functions, in violation of Title 36, Code of Federal Regulations (C.F.R.) § 2.32(a)(1) and Disorderly Conduct, in violation of 36 C.F.R. § 2.34(a)(2), offenses described as follows: **See Attachment A, Description of Count**

I further state that I am a United States Park Ranger with the National Park Service and that this complaint is based on the following facts: **See Attachment B, Statement of Probable Cause, Incorporated by Reference Herein.**

Continued on the attached sheet and made a part hereof:  ☒Yes  ☐ No

AUTHORIZED BY: Parker Stanley, AUSA

Alexander Karasik, Law Enforcement Ranger, NPS
Name of Complainant

**ALEXANDER KARASIK**
Digitally signed by ALEXANDER KARASIK
Date: 2025.07.17 15:54:53 -07'00'

Signature of Complainant

Sworn to telephonically before me
July 17, 2025 at 4:56 p.m
Date

at  Flagstaff, Arizona
City and State

HONORABLE CAMILLE D. BIBLES
United States Magistrate Judge
Name & Title of Judicial Officer

*[signature]*

Signature of Judicial Officer

**CC: USM & PTS**

# ATTACHMENT A
# DESCRIPTION OF COUNTS

## COUNT 1
### Interfering with Agency Function

On or between July 16 and 17, 2025, In the District of Arizona, within the confines of the Glen Canyon National Recreation Area, the defendant, STUART JAMES WINSOR, did knowingly and intentionally interfere with agency function by threatening a government employee engaged in an official duty, in violation of Title 36, C.F.R. § 2.32(a)(1)

## COUNT 2
### Disorderly Conduct

On or between July 16 and 17, 2025, In the District of Arizona, within the confines of the Glen Canyon National Recreation Area, the defendant, STUART JAMES WINSOR, with intent to cause public nuisance, or knowingly or recklessly creating a risk thereof, did use language, an utterance, or gesture, or engaged in a display or act that is obscene, physically threatening, or menacing, or done in a manner that is likely to incite an immediate breach of the peace, in violation of Title 36, C.F.R. § 2.34(a)(2)

## ATTACHMENT B

## STATEMENT OF PROBABLE CAUSE

I, Alexander W. Karasik, a United States Park Ranger, being duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a United States Park Ranger (USPR) with the National Park Service (NPS), United States Department of the Interior. I am presently assigned to the Intermountain Region, duty stationed at Glen Canyon National Park (GLCA), in the District of Arizona. I have been employed as a USPR with the National Park Service since 2023. Prior to working for the NPS, I worked as a Deputy Sheriff in the state of Pennsylvania as a full time sworn law enforcement officer for the Pike County Sheriff's Office beginning in 2018. I received training at the Federal Law Enforcement Training Center (FLETC) where I completed the Land Management Police Training Program consisting of approximately 750 hours of law enforcement training. I also received training at the Pennsylvania State Sheriff's Academy where I completed approximately 760 hours of law enforcement training. I earned a Master's degree in a criminal justice related field in 2022 and a Bachelor's degree in legal studies in 2017. I have attended numerous training courses in a variety of law enforcement subjects and have conducted criminal investigations into a variety of offenses, including felonies and misdemeanors. I maintain advanced certifications in control tactics from FLETC and am an active Field Training Officer.

2. The information contained in this affidavit is from my personal knowledge, as well as from information provided to your affiant by other law enforcement officers and/or witnesses including those listed herein. The affidavit is being made to establish probable cause, and as such, your affiant has not listed each item and every fact known regarding this investigation

3.     This investigation involves the violation of Title 36 Code of Federal Regulations § 2.32(a)(1): Interference and Title 36 Code of Federal Regulations § 2.34(a)(2) Disorderly Conduct. This incident took place within the Glen Canyon National Recreation Area on July 16th and 17th, 2025. Glen Canyon National Recreation Area is an area of proprietary jurisdiction of the United States within Coconino County, Arizona, and in the District of Arizona.

## INVESTIGATION/PROBABLE CAUSE

4.     On July 16, 2025, at 9:00am I, U.S. Park Ranger A. Karasik, was notified by Supervisory Ranger L. Yoder and Glen Canyon National Recreation Area (GLCA) dispatch regarding an aggravated male at the District Ranger Office. Ranger Yoder informed me she and Ranger S. Wagoner stopped this male, identified as STUART JAMES WINSOR by his Florida driver's license, the day prior for a traffic violation where the male was verbally argumentative. Rangers Wagoner and Yoder informed me they learned the male was in possession of a loaded firearm, a handgun, in the center console. During the contact WINSOR was insistent on accessing areas and compartments where Rangers believed firearms could have been located. When asked if the handgun was loaded, he informed the handgun is "always" loaded.

5.     I was driving towards the District Ranger Office when I saw a white Ford Expedition driving slowly down Lakeshore Drive with its hazard lights on, headed towards the South entrance station. I slowed down and witnessed the driver, matching the description of WINSOR, point his right hand at me. His hand was in the shape of a gun, with his middle, ring, and pinky finger folded in, his index finger pointed at me, and his thumb in the air. WINSOR simulated firing three shots at me, lifting his hand as to resemble the recoil of a handgun. He did this as I was passing his vehicle in the opposing direction. The vehicle was also failing to maintain its lane of travel, crossing over the white fog line, and driving under the speed limit.

6.     I turned around to follow the vehicle to ensure the safety of the public. I stayed approximately 150 yards behind his vehicle. When WINSOR saw me behind him, he pulled over onto the shoulder. WINSOR parked his vehicle in a gravel pullout that

overlooks the government residential housing area known as "Scorpion Place." I diverted course and pulled onto a maintenance access road to avoid escalating the situation. I parked my vehicle behind a maintenance building along with Ranger T. Castellucci. WINSOR exited his vehicle and walked in front of his engine towards the front of his Expedition. This action appeared to me as if WINSOR was putting himself in a position to engage in a conflict with law enforcement. He had an object in his hand, but I could not see what it was.

7. I waited until WINSOR left. He traveled down Lakeshore Drive towards the fee station. I waited approximately 5 minutes and drove down Lakeshore Drive in the same direction. I drove around a corner and saw WINSOR's vehicle turned around and facing me, parked in a roadway at one of the scenic viewpoints with its hazards on. It appeared as if the vehicle had turned around so that I could not pull behind him without having to drive past in proximity. I continued down Lakeshore Drive and did not engage. Approximately 15 minutes later, I passed the vehicle again, with his hazards on. It appeared that he saw my patrol vehicle and then pulled over on the shoulder. I did not engage and kept driving.

8. Rangers Yoder and Wagoner received a report approximately 20-30 minutes later that WINSOR was stopped at the South Entrance Fee Station and was walking towards the building with papers in his hand.

9. Rangers Yoder and Wagoner responded to the South Entrance Station. When they arrived on scene, they observed WINSOR walking back towards his vehicle. They activated their emergency lights and got out of the vehicle. When WINSOR saw them, he started yelling that he did not want to talk to them. He threw his hands up in the air and stated he has an attorney. He was approximately 75 feet away from them.

10. WINSOR then started walking towards Rangers Yoder and Wagoner saying, "By the way, where the fuck is my driver's license!" WINSOR's hands were down at his sides, and he was leaning forward towards the Rangers. WINSOR closed the distance from approximately 75 feet to 50 feet. He lifted his right arm into the air and was pointing towards the rangers. He began walking backwards away from them and was reaching inside

the right pocket of his shorts but then took it back out when ordered to do so. WINSOR continued yelling, "I have an attorney involved in this and you're going to lose your jobs!"

11. WINSOR began getting back into his vehicle as if to drive away, but then got back out and began using his cell phone to take photographs of Rangers Yoder and Wagoner. After approximately 20 seconds he drove away.

12. Rangers Yoder and Wagoner then spoke to Fee Booth Employee Michael Lively, who was in the South Entrance Fee Booth at the time of the incident. Lively stated that WINSOR had been walking around, taking photographs of Lively's personal vehicle, the fee booths, and the bathrooms. Lively provided a written statement which included the following information about WINSOR's actions: After unloading and loading unknown objects on the passenger side of his vehicle for approximately 5 minutes, WINSOR approached the entrance station. He circled the entrance stations multiple times taking pictures of the booths and signage. He then approached Lively's personal vehicle and took pictures of his vehicle and license plate. Next, he went into the restricted area around the entrance station restroom before returning to the entrance station and standing in the entrance lane (meant for vehicle traffic), where he again took pictures and knocked on the door.

13. During the events unfolding throughout the morning and afternoon of July 16, 2025, GLCA Dispatch received three calls on the emergency dispatch line. During these calls, WINSOR reported his interactions with Rangers but had no ongoing emergencies to report.

14. On July 17, 2025, at 8:30am I was notified by an NPS interpretation ranger that WINSOR had attended NPS education programs in the previous days and made the employees feel uncomfortable, discussing his possession of a weapon.

15. On July 17, 2025, at 8:40am I was notified by Ranger Yoder that WINSOR had returned to the campground store in Wahweap and made threatening statements about individuals within the campground. Rangers Yoder and Wagoner collected a statement from the campground store employee, Jessica Smith, who WINSOR spoke with. According

to Smith, WINSOR stated that a campground near him was being loud and was talking on a microphone after quiet hours. He then went on to state, "Too bad I don't have enough ammo to shoot them all."

## CONCLUSION

16. Based on the foregoing, your affiant submits that there is probable cause to believe that the defendant, STUART JAMES WINSOR, committed a violation of 36 C.F.R. § 2.32(a)(1) Interfering with Agency Function and 36 C.F.R. § 2.34(a)(2) Disorderly Conduct.

17. I declare under penalty of perjury under the laws of the Unites States of America that the forgoing is true and correct.

ALEXANDER KARASIK
Digitally signed by ALEXANDER KARASIK
Date: 2025.07.17 15:55:31 -07'00'

Alexander W. Karasik
United States Park Ranger
National Park Service

Sworn to and subscribed electronically this ___17th___ day of July, 2025.

HONORABLE CAMILLE D. BIBLES
United States Magistrate Judge